IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                  Crim. No. 22-cr-1724-KG

JERROLD ALBERT CHAVARRIA and
JERRY ANTOCIO ROMERO,

      Defendants.


MEMORANDUM OPINION AND ORDER

THIS MATTER comes before this Court on Defendant Jerry Antocio Romero's Motion

to Dismiss the Indictment (Doc. 37) filed March 17, 2023 (hereinafter "the Motion"). The

Motion was adopted by co-Defendant, Jerrold Albert Chavarria. (Doc. 38). The Motion is fully

and timely briefed. *See* (Docs. 37, 43, 45); *see also* (Doc. 46).

According to the Superseding Indictment, Defendants used a motor vehicle when

allegedly engaging in kidnapping resulting in death. (Doc. 33) at 1 (hereinafter "the

Indictment"). Also according to the Indictment, a vehicle is "a means, facility, and

instrumentality of interstate commerce." *Id.* The conclusion that the vehicle is a means, facility,

or instrumentality of interstate commerce has not been determined by Congress in the federal

kidnapping statute, but instead is so defined by the United States as Plaintiff in this case. *See id.*

(defining a motor vehicle as "a means, facility, and instrumentality of interstate commerce").

The United States acknowledges there is no Tenth Circuit authority on point, and no Supreme

Court authority determining the vehicle to be a means, facility, or instrumentality of interstate

commerce in the context of federal kidnapping. (Doc. 43) at 1. In the Motion, Defendant

contends federal jurisdiction cannot be maintained solely based on the use of a common vehicle

1

in a non-economic violent crime committed entirely intrastate absent explicit indication by

Congress to exercise Commerce Clause authority.  (Doc. 37) at 2-4, 7, 20-21.

      The Court acknowledges the very serious nature of the offense charged in the

Superseding Indictment.  Even so, the Court does not here consider questions of guilt, or the

gravity of the allegation.  At this stage, the Court instead is confronted with a primacy question

of law.  Having reviewed the briefing and the relevant law, this Court agrees with Defendant and

grants the Motion.

I.    *Background*

      The United States first filed an Indictment against Mr. Chavarria and Mr. Romero on

October 25, 2022, charging one count of kidnapping, as well as one count of aiding and abetting,

in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2 respectively.  (Doc. 2).  On February

22, 2023, the United States brought its First Superseding Indictment, charging one count of

kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1), and one count of aiding

and abetting, in violation of 18 U.S.C. § 2.  (Doc. 33).  The Indictment included the allegation

that Defendants "did unlawfully and willfully seize, confine, kidnap, adopt, carry away, and hold

Jane Doe for some purpose and benefit, and, in committing and in furtherance of the commission

of the offense, used a motor vehicle, a means, facility, and instrumentality of interstate

commerce, and, as to Jane Doe, death resulted."  *Id.* at 1.

      On March 17, 2023, Mr. Romero filed his Motion to Dismiss the Indictment ("Motion")

(Doc. 37), and the United States filed a Response on April 14, 2023.  (Doc. 43).  Mr. Romero

filed a reply on April 14, 2023, (Doc. 45), and a supplemental reply on May 16, 2013.  (Doc. 46).

      In his Motion, Mr. Romero indicates his concern regarding the Commerce Clause, noting

that the "victim in this case was never transported over state lines [and] all of the alleged

criminal activity happened within the geographic boundaries of the State of New Mexico."
(Doc. 37) at 2.  The United States opposes the motion.  (Doc. 43).

II.      *The Motion to Dismiss the Indictment*

      The crux of Mr. Romero's argument is as follows: "Here, the allegation that Romero used
a vehicle to transport a kidnap victim within the State of New Mexico, even if true, has no
economic impact on interstate or intrastate commerce and thus cannot not be used as a basis for
federal jurisdiction under the Commerce Clause–especially since there have been no
congressional findings and no laws enacted stating so."  (Doc. 37) at 20.  Mr. Romero notes there
"is no federal statute that makes the use of a common vehicle a means of interstate commerce
when that use does not have an economic effect on interstate commerce."  *Id.* at 3.  According to
Mr. Romero, this Court would be allowing the federal government to encroach impermissibly
upon the State's police power if it fails to grant the Motion.  *Id.* at 11, 20-21.  He asserts there is
neither explicit congressional intent to bring under federal jurisdiction this non-economic activity
or to so expand the limits of the Commerce Clause nor congressional hearings as to whether any
federal jurisdiction or extension in this manner is permissible given the Tenth Amendment and
our constitutional federal system of checks and balances.  *Id.* at 11, 20-21.  U.S. Const. Amend.
10.

      For the reasons elucidated more fully below, this Court concludes Mr. Romero's
argument is persuasive.

III.     *Discussion*

      As an initial matter, Mr. Romero fails to indicate under what rule or authority he is
bringing the Motion to Dismiss.  Nevertheless, this Court construes the Motion to Dismiss as
brought under Fed. R. Crim. P. 12 (b).

A. *Fed. R. Crim. P. 12 (b) Standard*

Any party may raise any "defense, objection, or request" by a pretrial motion if the court can determine the issue raised "without a trial on the merits." Fed. R. Crim. P. 12 (b)(1). "A motion that the court lacks jurisdiction may be made at any time while the case is pending." *United States v. Bowline*, 917 F.3d 1227, 1229 (10th Cir. 2019) (quoting Fed. R. Crim. P. 12 (b) (2)).

B. *The common vehicle as a means, facility, or instrumentality of interstate commerce*

Mr. Romero does not dispute that the federal kidnapping statute applies to instrumentalities of interstate commerce. However, he contends a vehicle is not an instrumentality of interstate commerce when used for intrastate non-economic violent crime such as kidnapping.  Mr. Romero also argues that "the Commerce Clause can be used to regulate the instrumentalities of interstate commerce--but only after congressional hearings that determine that the activity in question has a substantial effect on interstate commerce." (Doc. 37) at 7. Mr. Romero notes that "there are no congressional findings that the use of a vehicle to commit a crime just by itself brings the matter under [the] ambit of the Commerce Clause." *Id.* The United States acknowledges that "the Tenth Circuit has not squarely addressed the issue." (Doc. 43) at 5. Therefore, the United States largely relies on case law from other circuits when attempting to persuade this Court to deny Defendants' motion.

Mr. Romero relies on *United States v. Morgan* for his argument that this Court apply "Chief Justice Rehnquist's second prong analysis in this case [and find] that the use of a motor vehicle to effect a nonviolent transport in an alleged kidnapping intrastate case is, standing alone – not sufficient to bring the matter under the ambit of the Commerce Clause." (Doc. 37) at 6

4

(citing *United States v. Morgan*, 748 F.3d 1024, 1030-31 (10th Cir. 2014) (quoting *United States v. Lopez*, 514 U.S. 549 (1995))).

This Court will follow the example of the Supreme Court and "start with first principles." *Lopez*, 514 U.S. at 552.  According to the Supreme Court, regarding the subject matter presented, those are as follows:

> The Constitution creates a Federal Government of enumerated powers. *See* Art. 1, § 8. As James Madison wrote, "the powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite." The Federalist No. 45, pp. 292-93 (C. Rossiter ed. 1961). This constitutionally mandated division of authority "was adopted by the Framers to ensure the protection of our fundamental liberties." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Ibid.*
>
> The Constitution delegates to Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. 1, § 8, cl. 3. The Court, through Chief Justice Marshall, first defined the nature of Congress' commerce power in *Gibbons v. Ogden*, 22 U.S. 1, 9 (1824): "Commerce, undoubtably, is traffic, but it is something more: it is intercourse. It describes the commercial intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse."
>
> The commerce power "is the power to regulate; that is, to prescribe the rule by which commerce is to be governed." *Id*. at 196.

*Id*. at 552-53.  According to the Supreme Court, this Court has a constitutional obligation regarding the maintenance of "a healthy balance of power between the States and the Federal Government [to] reduce the risk of tyranny and abuse from either front."  *Id*. at 552 (*quoting Gregory*, 501 U.S. at 458).

The Supreme Court in *Lopez* discussed the outer limits of congressional power under the Commerce Clause noting that the Court previously commented in *Maryland v. Wirtz* "neither here [in *Maryland v. Wirtz*, 392 U.S. 183, 197, n. 27 (1968)] nor in *Wickard* [, 317 U.S. 111

(1942)] has the Court declared that Congress may use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities." *Id.* at 556-58.  Rather, "the Court has said only that where *a general regulatory statute bears a substantial relation to commerce*, the *de minimis* character of individual instances arising under that statute is of no consequence." *Id.* at 558 (citing *Wirtz*, 392 U.S. at 197, n. 27) (emphasis added by Court in *Lopez*).  Next, the Court "identified three broad categories of activity that Congress may regulate under its commerce power." *Id.* at 558.

> First, Congress may regulate the use of the channels of interstate commerce; [s]econd, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; [and], [f]inally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, that is, those activities that substantially affect interstate commerce.

*Id.* at 558-59 (all internal citations omitted).

Although the remainder of the Court's decision largely revolves around application of the third category of activity that Congress may regulate under its commerce power, while in this matter the second category is applicable, some aspects of the decision nevertheless are instructive.  For example, when determining which category applied to the question presented, the Court categorized the second category of Congress' commerce authority as regulations "by which Congress has sought to protect an instrumentality of interstate commerce or a thing in interstate commerce." *Id.* at 559.  This Court notes that the purported instrumentality of interstate commerce in this matter, a vehicle, is not what Congress sought to protect when enacting the kidnapping statute.  The way the Court characterizes this second category suggests that vehicles are not an instrumentality of interstate commerce in connection with the kidnapping statute, by which Congress sought to protect human kidnapping victims.

6

As an initial matter, this Court agrees with the parties regarding the applicability of the second category to the question presented: the vehicle is indicated in the Superseding Indictment as a "means, facility, and instrumentality of interstate commerce." (Doc. 33). And, neither party contends it is a channel of interstate commerce or that we are dealing with activities having a substantial relation to interstate commerce. *Id.*; (Doc. 37) at 6 (citing *Morgan*, 748 F.3d at 1030-31); *Lopez*, 514 U.S. at 558-59 ("identify[ing] three broad categories of activity that Congress may regulate under its commerce power," including the second category in which Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities") (citations omitted).

In *Morgan*, the Tenth Circuit was presented with an as-applied Commerce Clause challenge in a federal kidnapping case, as is this Court. 748 F.3d at 1030-31 (footnote omitted). Within the factual history, the Tenth Circuit noted that a co-conspirator had "tracked [the victim's] location on the Internet using Google Maps, enabling [two defendants] to follow [the victim] in their vehicle." *Id.* at 1029. This Court notes the use not only of the Internet, but also a vehicle by two of the defendants. *Id.* The third defendant "painted his Chevrolet Tahoe black." *Id.* Further in the factual history it is revealed that one of the defendants got into a vehicle, a Chevrolet Tahoe, and questioned the victim "while an unknown co-conspirator drove the Tahoe around." *Id.* The third kidnapping defendant drove different kidnapping victims to a home. *Id.* Hence all defendants utilized a vehicle during the kidnapping. *Id.* While noting that "each of the four kidnapping counts alleged the defendants 'used a means, facility, and instrumentality of interstate and foreign commerce,' those being cellular telephones, the Internet, and a Global Positioning System," the Tenth Circuit does not include the vehicle in the list. *Id.* at 1031

(citation omitted). This Court finds it relevant that despite all defendants utilizing a vehicle during the kidnapping, the Tenth Circuit does not list vehicles among the means, facilities, or instrumentalities of interstate or foreign commerce used by defendants. *Id*. There is no other relevant discussion of the vehicle. It appears to this Court that to the extent the Tenth Circuit indicates anything regarding vehicles, which this Court is not concluding occurred, the indication is that vehicles without more are not instrumentalities of interstate commerce. *See id*.

Similarly, although the Supreme Court in *Lopez* was analyzing a Commerce Clause challenge to a regulation in the third category, applying the high court's rationale to the circumstances presented here supports the conclusion that the Motion should be granted. 514 U.S. at 566. In *Lopez,* the Court noted it previously had "held that the question of congressional power under the Commerce Clause 'is necessarily one of degree.'" *Id.* Although noting the Court was not providing "precise formulations," the Court indicated the correct decision was premised in part on the fact that the regulation at issue was "in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce… and there [was] no requirement that [defendant's violation of the statute] have any concrete tie to interstate commerce." *Id*. at 567. The Court also concluded that the statute was not part of a regulatory scheme that could be undercut without the challenged regulation. *Id.* at 561. The Court noted that there was no jurisdictional element to ensure through case-by-case inquiry the regulation was being applied in a circumstance with the requisite nexus with interstate commerce. *Id.* Therefore, the Court concluded that to uphold the requested application of the statute, the Court "would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at 567. The Court indicated that to "do so would require [the Court]

8

to conclude that the Constitution's enumeration of powers does not presuppose something not enumerated, and that there never will be a distinction between what is truly national and what is truly local." *Id.* at 567-68 (citations omitted). The Supreme Court was "unwilling to do" that. *Id.* at 568. This Court finds the Court's rationale persuasive.

Mr. Romero also argues comparing the circumstances of this matter to the Supreme Court's decision in *Morrison* further supports granting his Motion. (Doc. 37) at 11-13 (citing *United States v. Morrison*, 529 U.S. 598 (2000)). However, again thus implicates the third category. *Morrison*, 529 U.S. at 609. While applying a presumption of validity, the Court nevertheless emphasized the importance of "the role that the economic nature of the regulated activity plays in our Commerce Clause analysis." *Id.* at 610. The Supreme Court specifically indicated "a fair reading of *Lopez* shows that the noneconomic, criminal nature of the conduct at issue was central to our decision in that case." *Id.* at 610-11 (citing *Lopez,* 514 U.S. at 551, 559-60, 560, 561, 566, 567, 573-74, 577, 580) (footnote omitted). The Court next indicated, when interpreting *Lopez*, the "second consideration that we found important in analyzing Section 922 (q) was that the statute contained 'no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.'" *Id.* at 611-12 (quoting *Lopez,* 514 U.S. at 562). The Court noted that "a jurisdictional element may establish that the enactment is in pursuance of Congress' regulation of interstate commerce." *Id.* at 612. The Supreme Court continued: "Third, we noted that neither Section 922 (q) 'nor its legislative history contains express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone.'" *Id.* (quoting *Lopez,* 514 U.S. at 562 (other citation omitted)). The Court noted that formal findings regarding substantial burdens on interstate commerce are not required. *Id.* (quoting *Lopez,* 514

U.S. at 562) (other citations omitted). The Court indicated the final factor relied on in *Lopez*:

"[O]ur decision in *Lopez* rested in part on the fact that the link between gun possession and a

substantial effect on interstate commerce was attenuated." *Id.* (quoting *Lopez,* 514 U.S. at 563-

67).

The Supreme Court then applied *Lopez* to the Violence Against Women Act in *Morrison*,

after referring to the just discussed "principles underlying our Commerce Clause jurisprudence."

*Id.* at 613 (interpreting 42 U.S.C §13981). First, the Court noted that crimes of violence

regulated by the statute were not "in any sense of the phrase, economic activity." *Id.* Similarly,

this Court notes the direct analog to this case, with its non-economic, criminal nature. The Court

noted that "thus far in our Nation's history our cases have upheld Commerce Clause regulation of

intrastate activity only where that activity is economic in nature." *Id.* (citing *Lopez,* 514 U.S. at

559-60, and the cases cited therein). Next, the Court noted that the statute at issue did not

contain any "jurisdictional element establishing that the federal cause of action is in pursuance of

Congress' power to regulate interstate commerce." *Id.* Again, this Court notes the direct

analogy to this case, in which there is no explicit reflection either of Congress' intent for

application of the federal kidnapping statute whenever there is the use of a vehicle, nor any

jurisdictional element requiring an explicit connection between the use of a vehicle and interstate

commerce. Third, the Court noted that in "contrast with the lack of congressional findings that

we faced in *Lopez*, §1391 *is* supported by numerous findings regarding the serious impact that

gender-motivated violence has on victims and their families." *Id.* at 614 (citing H.R. Conf. Rep.

No. 103-711, p. 385 (1994); S. Rep. No. 103-138, p. 40 (1993); S Rep. No. 101-545, p. 33

(1990)). The Court noted that such findings are not sufficient necessarily, further noting that

"[s]imply because Congress may conclude that a particular activity substantially affects interstate

10

commerce does not necessarily make it so." *Id.* (quoting *Lopez,* 514 U.S. at 557, n.2 (quoting

*Hodel v. Virginia Surface Mining & Reclaiming Assn., Inc.*, 452 U. S. 264, 311 (1981)

(Rehnquist, J., concurring in judgment))).  This Court notes by analogy that in this matter there

are no congressional findings regarding the impact of a vehicle involved in kidnapping on

interstate commerce and it appears the United States has made such conclusion of law as part of

its Superseding Indictment when it defined the vehicle as an instrumentality of interstate

commerce.  (Doc. 33) at 1.  The Court found that the fourth factor, the link between the regulated

activity and a substantial effect on interstate commerce, was based on an unworkable method of

reasoning, which appears to this Court to be the same reasoning inherently relied on here in this

case.  *Morrison*, 529 U.S. at 615.  Applying these factors and rationale, with the presumption of

constitutionality, the Court rejected "the argument that Congress may regulate noneconomic,

violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce."

*Id.* at 617.  In doing so, the Court indicated it could "think of no better example of the police

power, which the Founders denied the National Government and reposed in the States, than the

suppression of violent crime and vindication of the victims."  *Id.* at 618 (citations and footnote

omitted).  This Court notes that concern of the Court directly applies to the case at bar.

In summary, the Supreme Court in large part relied on the noneconomic, criminal nature

of the statute it was analyzing, while also relying in part on the lack of a jurisdictional element to

ensure the requisite nexus between the regulated activity and interstate commerce.  *Id.*  As noted,

both of those factors weigh against allowing federal jurisdiction in the case at bar.  Even with a

presumption of validity and a congressional record demonstrating that the challenged statute,

§13981, was "supported by numerous findings regarding the serious impact that gender-

motivated violence has on victims and their families," the Supreme Court emphasized "the

11

concern that we expressed in *Lopez* that Congress might use the Commerce Clause to obliterate completely the Constitution's distinction between national and local authority." *Id*. at 615 (citing *Lopez*, 514 U.S. at 564).  Although the Court was applying the third category of *Lopez*, and this matter falls under category two, this reasoning and rationale of the Court is very persuasive.  The Court repeatedly emphasized its concern with the use of the Commerce Clause to assert federal jurisdiction over intrastate violent crime, especially when there is a dearth of congressional or case-by-case jurisdictional findings of an actual effect on interstate commerce.  This is the exact concern presented to this Court in this case.  There is no governing Supreme Court or Tenth Circuit case on point.  This fact makes the reasoning of the Supreme Court in similar cases very persuasive to this Court.  Based on the reasoning of the Supreme Court in *Lopez*, as well as in *Morrison* applying *Lopez*, this Court finds persuasive the impropriety of extending federal jurisdiction under the Commerce Clause because of a use of a vehicle without explicit congressional intent to regulate non-economic criminal behavior and with no jurisdictional or case-by-case inquiry.  *See id*. at 615 (*citing Lopez*, 514 U.S. at 564).   This Court is persuaded the Motion should be granted.

In opposition, the United States relies in part on *United States v. Windham* for the contention that Defendants' argument that the use of a common vehicle is an insufficient basis for federal jurisdiction has been "flatly rejected." (Doc. 43) at 5 (citing 53 F.4th 1006 (6th Cir. 2022)).  However, the Sixth Circuit in *Windham* was presented with the issue of whether the use of a cell phone and a vehicle together satisfied the requirement of the use of an instrumentality of interstate commerce.  *Windham*, 53 F.4th at 1011.  Here, there are no allegations regarding the use of a cell phone.  Defendants contend that the use of a common vehicle alone is insufficient to establish federal jurisdiction.  *Windham* cannot answer that question for this Court.

Regarding the use of the cell phone, the Tenth Circuit addressed a Commerce Clause challenge to the federal kidnapping statute in *Morgan*, 748 F.3d at 1031-32.  Although the United States argues *Morgan* supports its position, this Court is not persuaded.  First, this Court notes the Tenth Circuit was presented with an appeal where defendants allegedly "used a means, facility, and instrumentality of interstate and foreign commerce, those being cellular telephones, the internet, and a Global Positioning System, in committing and in furtherance of the commission of the offense." *Morgan*, 748 F.3d at 1031 (citation omitted).  This Court finds relevant that although defendants in *Morgan* used a vehicle, the Tenth Circuit in *Morgan* did not include the vehicle when listing the instrumentalities of interstate commerce used by defendants, but instead noted only cell phones, the Internet, and the GPS system. *Id.* at 1029, 1031.  In fact, it appears the vehicle was essential to their kidnapping plot in that one of the defendants "got into the Tahoe [vehicle] and questioned [the victim] about where he kept his money while an unknown co-conspirator drove the Tahoe around." *Id.* at 29.  If the Tenth Circuit was implying that a vehicle was an instrumentality of interstate commerce in *Morgan*, the court would have listed the vehicle when delineating what instrumentalities of interstate commerce the defendants had used, but instead explicitly indicated the instrumentalities of interstate commerce to be "cellular telephones, the internet, and a Global Positioning System." *Id*. at 1031 (citation omitted).  If indicating anything at all regarding vehicles, which does not appear to be the case, the Tenth Circuit excluded vehicles from instrumentalities of interstate commerce in *Morgan*. *See id.*

In addition to *Means*, a murder-for-hire case involving a phone but not a vehicle, the United States relies on another murder-for-hire case primarily involving the use of a cell phone. (Doc. 43) at 6 (citing *United States v. Mandel*, 647 F.3d 710, 720, 722 (7th Cir. 2011); *United*

*States v. Means*, 2008 WL 4726230, at **3-**4 (10th Cir. 2008) (unpublished opinion)); *see also*

*Means*, 2008 WL 4726230, at **1 ("Means was charged with and pled guilty to conspiracy to

violate 18 U.S.C. §1958(a), use of an interstate facility, to wit: a telephone, in a murder-for-hire

scheme").  Although the Circuit court discussed use of a vehicle as an instrumentality of

interstate commerce, the defendant did not "dispute that an automobile, as a 'means of

transportation,' constitutes a facility of interstate commerce for purposes of the federal murder

for hire statute." *Mandel*, 647 F.3d at 720 (*citing* § 1958 (b)(2)).  The issue defendant in *Mandel*

did not dispute is the sole issue this Court must determine to decide the Motion.  This detracts

greatly from the persuasiveness of that case.  That is not the only factor distinguishing *Mandel*.

Because defendant had not raised the issue before, the court utilized the standard of clear error.

*Id*.  Importantly, the standard appears to have been highly relevant as the Seventh Circuit took

note of the dissent in *Bishop*: "whereas rail, plane, and commercial truck traffic is almost always

commercial in character, the use of private automobiles is often neither interstate nor

commercial; the mere fact that private cars can be used in interstate commerce thus was

insufficient, in his view, to justify the exercise of the commerce power." *Id*. at 722 (citing

*United States v. Bishop*, 66 F.3d 569, 598 (3d Cir. 1995) (Judge Edward R Becker, dissent)).

The Seventh Circuit concluded that defendant had some support for his argument that the vehicle

must be used in interstate commerce but ultimately noted such "citations merely demonstrate a

difference of opinion as to the reach of federal authority vis-à-vis automobiles, not plain error."

*Id*. (applying plain error to uphold the conviction, explicitly suggesting a close decision).  This

Court remains unpersuaded that the mere use of a vehicle in this case is sufficient for federal

jurisdiction absent explicit indication by Congress.

The United States also cites *Weathers* in support of its Response. (Doc. 43) at 6 (citing *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)). However, the court in that case determined that the use of the word "of" prior to interstate commerce versus the word "in" can implicate purely intrastate activities. *Weathers*, 169 F.3d at 341. Nevertheless, the court still addressed whether the alleged instrumentality of interstate commerce at issue, that is a cell phone, met the definition. *Weathers,* 169 F.3d at 342. The court found that the cell phone use at issue met the definition because despite defendant's use of a cell phone to make an intrastate call, "interstate activities were required to make that connection possible." *Id.* This Court is not persuaded by *Weathers* to find that the use of a vehicle in this matter is sufficient to provide federal jurisdiction as no interstate activity is alleged here.

The Response contains a string of cases purportedly holding "that vehicles are instrumentalities of interstate commerce." (Doc. 43) at 8 (citing *United States v. Bishop*, 66 F.3d 569, 578-79 (3d Cir. 1995) (applying carjacking statute, 18 U.S.C. § 2119) (quoting House Report No. 102-851 (I) at 14, 15, (II) at 12, (III) at 2); *United States v. Cobb*, 144 F.3d 319, 320 (4th Cir. 1998) (applying carjacking statute); *United States v. McKenry*, 97 F.3d 125, 126 (6th Cir. 1996) (applying carjacking statute); *United States v. Robinson*, 62 F.3d 234, 236-37 (8th Cir. 1995) (applying carjacking statute, noting that "Congress cited a direct link between carjacking and negative effects on interstate commerce"); *United States v. Oliver*, 60 F.3d 547, 548-50 (9th Cir. 1995) (applying carjacking statute)). However, the courts were applying a different statute that the Third Circuit, for example, noted involved congressional hearings with a three-part report examining automobile theft, including a significant finding that "automobile theft has become the nation's number one property crime problem," further discussing and delineating the "economic costs" of this "national problem." *Bishop*, 66 F.3d at 578-79 (applying carjacking

statute, 18 U.S.C. § 2119) (quoting House Report No. 102-851 (I) at 14, 15, (II) at 12, (III) at 2).

This Court concludes these cases can be distinguished on this very important basis: Congress

regulated economic activity it found after hearings to have a national effect when enacting the

carjacking statute.  Here, there are no Congressional findings, hearings, or reports connecting

kidnapping using a vehicle with negative effects on interstate commerce.  Here, there is no

finding by Congress of any economic cost requiring the assertion of federal jurisdiction over a

problem Congress finds to be national regarding the use of a vehicle for kidnapping.

Additionally, the United States takes issue with Defendants' argument that the use of a

common vehicle is an insufficient basis for federal jurisdiction, asserting it has been "flatly

rejected," and relying in part on *United States v. Protho*.  (Doc. 43) at 5-6 (citing 41 F.4th 812,

828 (6th Cir. 2022)).  First, as noted by the Sixth Circuit itself in *Protho*, in the circumstances

presented to that court there was "no doubt that the Ford Explorer at issue was used in interstate

commerce, [because] on the day of the kidnapping, Protho drove the Ford Explorer interstate

(from his home in East Chicago, Indiana, to the site of the kidnapping in Calumet City, Illinois)."

*Protho*, 41 F.4th at 828.  This fact distinguishes *Protho* from the question presented to this Court.

Furthermore, to the extent that the Sixth Circuit held, as argued by the United States, that "the

nature of vehicles renders them *per se* instruments of interstate commerce [as a] determination of

law pivotal to its decision," which, this Court is not persuaded occurred, this Court declines to be

persuaded by the Sixth Circuit's holding, for the reasons discussed above in this section, *see*

*supra*.  (Doc. 43) at 6 (quoting *Protho*, 41 F.4th at 829).

The United States argues that Defendants' motion "requires this Court to view vehicles

individually, as opposed to [as] a class, when deciding their instrumentality status."  (Doc. 43) at

3.  But as this has not turned out to be the case, this argument is not persuasive.

Defendant finds support for his argument additionally in the fact that "18 U.S.C. §1201(b), the federal kidnapping statute itself, has sections for assuming interstate transport of a kidnapped victim is an essential element of the offense." (Doc. 37) at 9.  Indeed, there is "a rebuttable presumption that [a victim not released within 24 hours] has been transported in interstate or foreign commerce." 18 U.S.C. §1201(b).  Similarly, Mr. Romero notes that "the Pattern Criminal Jury Instruction for the 10th Circuit 2.55 makes it clear that one of the elements to be proved is that the victim of a kidnapping was transported interstate." (Doc. 37) at 9 (quoting Instruction 2.55, Comment, second Use Note ("so long as the defendant crossed a state line while intentionally transporting the victim")).  These arguments have a modicum of persuasiveness regarding the interpretation of the kidnapping statute under which the United States indicted Defendants.  18 U.S.C. §1201(b).

As multiple arguments of Mr. Romero have persuaded this Court, this Court declines to address other arguments he presents in his Motion.  *See, e.g.*, (Doc. 37) at 10 ("Rolling past a stop sign or switching lanes without signaling are then federal offenses"), 20-21 ("the federal judiciary may limit a Commerce Clause grant of power–but it cannot expand it by judicial fiat to include activity Congress has never criminalized"); (Doc. 45) at 9 (arguing "had it been congressional intent to bring the mere use of a vehicle in a kidnapping to bring the kidnapping under the ambit of the commerce clause… then Congress could have clearly done so"); *see also* (Doc. 46) at 1, 2-5 (arguing recent First Circuit case supports the Motion, discussing "a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement from Congress") (relying on *U.S. v. Abdelaziz*, 2023 WL 3335870, No. 22-1159 (May 10, 2023)).

IV.   *Conclusion*

This Court concludes that there is no federal jurisdiction because of the reasons discussed herein.  Congress has not indicated an intent to assert Commerce Clause authority and bring under federal jurisdiction non-economic criminal kidnapping entirely occurring intrastate simply because of the use of a common vehicle.  For this reason and the reasons discussed herein, this Court concludes that the Motion must be granted.

Mr. Romero's Motion to Dismiss the Superseding Indictment filed March 17, 2023, is GRANTED without prejudice.  (Doc. 37).

Mr. Chavarria's Motion to Dismiss the Superseding Indictment, as adopted, is GRANTED without prejudice.  (Doc. 38); *see also* (Doc. 37).

IT IS SO ORDERED.


_____
UNITED STATES DISTRICT JUDGE